UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4582(DSD/JJG)

Carol L. Frisk,

       Plaintiff,

v.   **ORDER**

Metropolitan Life Insurance
Company,

       Defendant.

    William J. Marshall, Esq. and Midwest Disability, PLLP, 408 Northdale Boulevard N.W., Coon Rapids, MN 55448, counsel for plaintiff.

    William D. Hittler, Esq. and Halleland, Lewis, Nilan & Johnson, 220 South Sixth Street, Suite 600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant Metropolitan Life Insurance's ("MetLife") motion.

**BACKGROUND**

This disability benefits dispute arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. On January 4, 1999, plaintiff Carol Frisk ("Frisk") began work as a senior assistant scientist at Warner-Lambert in Ann Arbor, Michigan. Frisk participated in the company's ERISA-governed long-term disability plan ("Plan") that was funded and

administered by Warner-Lambert. MetLife adjusted claims under the Plan pursuant to its discretionary authority to interpret the Plan's terms and determine a claimant's eligibility for benefits. (Admin. R. at 157-58.)

Frisk took medical leave in June 1999 because of pregnancy-induced hypertension. While on leave, Frisk was diagnosed with moderate tendinitis and mild bilateral carpal tunnel syndrome ("CTS") in October 1999. Frisk applied to MetLife for long-term disability benefits in December 1999. MetLife approved her claim on December 21, 1999, and began monthly benefits payments of $2,083.43.

Frisk was unable to return to work, and Warner-Lambert terminated her on February 17, 2000. MetLife did not pay Frisk's benefits from December 20, 2001, to January 7, 2002, and from February 28, 2004, to May 18, 2004, after determining that her condition fell under the Plan's neuromuscular and soft tissue disorder limitation clause ("limitation clause").[1] (Id. at 144-45, 302, 456-57, 861, 1726.) MetLife reinstated Frisk's benefits each

---

[1] Under Article 4 of the Plan, "[i]n the case of a total disability due to ... (c) neuromuscular and soft tissue disorders ... disability benefits ... shall commence as of the day following the qualifying disability period and shall continue during the period of total disability but not beyond ... twenty-four months after such payments commence." (Id. at 144-45.)

2

time after Frisk appealed its decision and submitted evidence that the limitation clause did not apply to her condition. (Id. at 861, 884.)

From 2000 to 2006, Frisk consulted at least ten different doctors about her hand and wrist pain, as well as other health issues, including sleep apnea, fibromyalgia, restless leg syndrome, hypothyroidism, myopathy and muscle fatigue. Frisk also met with a number of doctors at MetLife's behest for independent medical evaluations ("IME").

On August 30, 2006, MetLife sent Frisk a letter stating that she was no longer eligible for long-term disability benefits for two reasons. First, a June 6, 2006, IME indicated that Frisk "should avoid activities that require repetitive hand movements" but that she was otherwise not restricted or limited by CTS or fibromyalgia. (Id. at 1339.) Second, an employability assessment ("EA") conducted on August 23, 2006, found that Frisk could perform other gainful occupations such as cytotechnologist, materials scientist and research scientist. (Id. at 1340.) As a result, MetLife terminated Frisk's benefits because she was not disabled from all occupations.

Frisk appealed MetLife's decision on April 25, 2007, arguing that she was disabled due to CTS, fibromyalgia, sleep apnea and hypertension. (Id. at 1054-58.) After MetLife and two independent physician consultants reviewed Frisk's file, MetLife upheld its

3

decision on August 7, 2007, determining that Frisk did not meet the Plan's definition of "total disability."  Thereafter, Frisk filed a lawsuit in state court in October 2007 to recover the benefits. MetLife timely removed, and the parties filed cross-motions for summary judgment on October 1, 2008.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See

4

Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

**II. Denial of Benefits**

    **A.   Standard of Review**

Under ERISA, a plan participant may bring a civil action to "recover benefits due to her under the terms of her plan."  29 U.S.C. § 1132(a)(1)(B).  Where, as here, an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits, the court generally reviews an administrator's decision to deny benefits for abuse of discretion.  See Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2350 (2008) (deferential standard of review applies to discretionary decision-making) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 581 (8th Cir. 2008).  Heightened scrutiny, however, is warranted upon a plaintiff's showing that "a serious procedural irregularity existed which caused a serious breach of the plan administrator's fiduciary duty."  Wakkinen, 531 F.3d at 581 (quoting Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998)).  Such a situation occurs "where, in the exercise of [its] power, [a plan fiduciary]

acts dishonestly, or from an improper motive, or fails to use judgment in reaching [its] decision." Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 837 (8th Cir. 2006).

Frisk first argues that MetLife's February 28, 2004, decision that the limitation clause precluded her receipt of benefits constituted a serious procedural irregularity. Frisk alleges that, at the time it made the decision, MetLife possessed an October 10, 2001, report stating that Frisk's condition did not fall under the limitation clause. Frisk also maintains that MetLife did not tell her that her benefits would be terminated or the reasons for its decision.

MetLife's actions in 2004, however, are irrelevant to the court's determination of whether a serious procedural irregularity impacted the August 30, 2006, termination of Frisk's benefits. Moreover, the 2004 decision does not suggest that MetLife engaged in a general practice of arbitrary and unreasonable decision-making. MetLife acknowledged on February 2, 2004, that Frisk had not received notice of her benefits termination and granted her an additional 30 days of benefits. (Admin. R. at 880.) After Frisk appealed MetLife's decision, it determined that the limitation clause did not apply and promptly reinstated her benefits. (Id. at 1719.) Such actions were reasonable and appropriate, and do not show that MetLife acted dishonestly or with an improper motive.

Frisk next argues that a heightened standard of review applies because MetLife knowingly disregarded its internal standards when it determined that Frisk was not totally disabled. Specifically, Frisk contends that MetLife ignored a June 18, 2007, internal email written by MetLife employee Deanna Denmead ("Denmead"). In the email, Denmead stated that to find Frisk employable - and thus ineligible for disability benefits - Frisk had to be able to perform at least three occupations. (Id. at 32.) Denmead questioned the August 23, 2006, EA's conclusion that Frisk was employable, noting that Frisk could not perform two of the three positions listed in the EA because those positions required repetitive hand movements. (Id.) Frisk argues that MetLife nevertheless relied on the EA's conclusion as a justification for terminating her benefits.

Denmead's email, however, did not set forth MetLife's procedure. Rather, Article 4 of the Plan states that an employee is eligible for benefits "who ... becomes totally disabled as a result of accidental bodily injury or sickness." (Id. at 142.) As stated in the Plan and in MetLife's August 30, 2006, letter to Frisk, "total disability" means "the complete inability of an employee to perform substantially all of the material duties of her regular occupation as it is generally performed in the national economy, or perform another occupation for which the employee is qualified and can earn at least seventy-five percent of pre-

7

disability compensation." (Id. at 137, 1339.) Therefore, MetLife's official policy does not require that an employee be able to perform three jobs to be ineligible for disability benefits, and Denmead's email does not establish a procedural irregularity.

Furthermore, even assuming that an irregularity occurred, "[t]he mere assertion of an apparent irregularity, without more, is insufficient to give rise to heightened review." Kesco v. Meredith Corp., 480 F.3d 849, 852 (8th Cir. 2007) (internal quotation omitted). Rather, a plaintiff must show that the irregularity had some connection to the substantive decision to deny benefits. See Torres v. UNUM Life Ins. Co. of. Am., 405 F.3d 670, 679 (8th Cir. 2005). The evidence must give rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 768 (8th Cir. 2000). This requirement "presents a considerable hurdle" that few plaintiffs surpass. Id.

As discussed below, MetLife relied on a variety of sources - including two February 2006 paper reviews of Frisk's medical file, a June 2006 IME, surveillance videos, Frisk's own statements, the opinions of Frisk's treating neurologist and two May 2007 reviews conducted by independent physician consultants - to decide that Frisk was not totally disabled. Therefore, "[t]his is not a case where the plan trustee failed to inquire into the relevant circumstances at issue ... or committed irregularities so severe

8

that the court has a total lack of faith in the integrity of the decision-making process." Pralutsky, 435 F.3d at 838. Accordingly, the court reviews MetLife's decision for an abuse of discretion.

**B. Substantive Review**

Under the abuse of discretion standard, the court will uphold MetLife's benefits decision if it was supported by substantial evidence. See McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004.) "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. See id.

In this case, two February 2006 paper reviews and a June 2006 IME indicated that Frisk could perform work within "a sedentary to light-demand occupation with limited [to occasional] repetitive hand activities." (Admin. R. at 1409, 1421, 1432.) These findings were corroborated by surveillance videos showing Frisk lifting heavy household items and Frisk's 2006 statement that her daily activities included "exercising, computer use, laundry, vacuuming, dusting, washing dishes, mopping, and taking care of her two children." (Id. at 1399, 1477, 1479.) Furthermore, on April 12, 2006, Frisk's treating neurologist, Dr. Lebow ("Lebow") found that

9

"while [Frisk] does have mild delay of median sensory nerve conduction, this would not qualify [as] 'CTS.'" (Id. at 1360.) At a follow-up appointment on May 26, 2006, Lebow stated that "[Frisk's] testing looked good," and while mild symptoms persisted, there was "certainly nothing that would cause substantial CTS." (Id. at 1359.) Lastly, two independent physician consultants issued separate reports in May 2007, concurring with MetLife's decision to deny Frisk benefits and concluding that Frisk "is capable of unrestricted work." (Id. at 1040, 1046.) Therefore, substantial evidence supported MetLife's termination of Frisk's benefits. See Rutledge v. Liberty Life Assur. Co., 481 F.3d 655, 660 (8th Cir. 2007)(substantial evidence existed when claim administrator considered treating physicians' opinions, medical file reviews and IMEs); Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir. 2006)(substantial evidence existed when claim administrator reviewed medical records and consulted independent physician).

Frisk, however, argues that MetLife abused its discretion by engaging in predatory denial practices. Frisk maintains that MetLife's sole goal from the time of her first application for benefits has been to terminate those benefits. The evidence does not support this allegation. To the contrary, the record shows that MetLife paid Frisk benefits for a total of six-and-a-half years, engaged in thorough appeals processes and twice reinstated

Frisk's benefits when provided with medical evidence detailing her ongoing disability. Therefore, the court determines that MetLife did not abuse its discretion in terminating Frisk's long-term disability benefits, and summary judgment in favor of MetLife is warranted.

## CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that

1. Plaintiff's motion for summary judgment [Doc. No. 21] is denied.

2. Defendant's motion for summary judgment [Doc. No. 13] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 13, 2009

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court